PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MATTHEW GUNNER, | ) |
| | ) CASE NO. 3:09CV03009 |
| Petitioner, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| ROBERT WELCH, | ) |
| | ) **MEMORANDUM OF OPINION AND** |
| Respondent. | ) **ORDER** [Resolving ECF No. 1] |

Petitioner Matthew Gunner filed a petition for a writ of habeas corpus. ECF No. 1. The Court assigned the case to Magistrate Judge William Baughman in accordance with 28 U.S.C. § 636(b)(1)(B) to complete a report and recommendation. Magistrate Judge Baughman issued the report and recommended that the Court dismiss the petition because Gunner's habeas claim had been procedurally defaulted. ECF No. 15. Gunner timely filed an objection (ECF No. 16), and, later, supplemental memoranda. ECF Nos. 18 and 22. The issue before the Court is whether Gunner may establish cause for his procedural default through the failure of his appointed counsel on direct appeal to advise him of the time limit for pursuing post-conviction relief. Because the Court finds that Gunner may not, the Court adopts the report and recommendation of the magistrate judge, subject to the modifications set forth in this decision, and dismisses Gunner's petition for habeas relief.

## I. Factual and Procedural History

**a. State Legal Proceedings**

In July of 2006, Gunner was charged in the Lucas County Court of Common Pleas with

(3:09CV03009)

possession of and trafficking in crack cocaine.  ECF Nos. 1 at 1; 8-1 at 5-6.  Gunner, through counsel, entered pleas of not guilty.  ECF Nos. 1 at 1; 1-1 at 2.  The matter proceeded to a jury trial where Gunner was found guilty on both counts.  ECF No. 8 at 4.  He is currently serving a ten-year sentence at the Toledo Correctional Institution.  ECF No. 1.

Represented by new court-appointed counsel, Gunner appealed his conviction to the Sixth District Court of Appeals.  ECF Nos. 1-1 at 5; 8-1 at 14; 15 at 4.  Gunner argued that he was denied effective assistance of counsel at trial because certain evidence, which he claimed was inadmissible, was admitted without an objection from his attorney.  ECF No. 8-1 at 15.  The appeals court rejected Gunner's claim and affirmed the judgment.  ECF No. 8-1 at 55.  Through a third attorney hired by his mother (ECF No. 8-1 at 109), Gunner appealed to the Ohio Supreme Court.  ECF Nos. 8-1 at 57; 15 at 23.  The Ohio Supreme Court dismissed the appeal because it did not involve a substantial constitutional question.  ECF No. 8-1 at 85.

Before the Ohio Supreme Court entered its dismissal, Gunner, through the same ("third") lawyer who had filed the notice of appeal in the Ohio Supreme Court, timely filed an application with the Sixth District Court of Appeals to re-open his appeal under Ohio Appellate Rule 26(B).[1]  ECF No. 8-1 at 86.  The basis for the application was Gunner's claim that his court-appointed appellate counsel had been ineffective because he had failed to advise Gunner of the time limit for filing a petition for post-conviction relief.  ECF No. 8-1 at 87.  That time limit

---

[1] Ohio Appellate Rule 26(B) provides in relevant part: "A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel."

2

(3:09CV03009)

was 180 days from the day on which the trial transcript was transmitted to the appeals court. R.C. § 2953.21(A)(2).² According to Gunner, he had a "potentially meritorious" claim that his trial attorney was ineffective for failing to counsel him about the advantages of accepting a plea offer. ECF No. 8-1 at 89. Under Ohio law, such a claim could only be asserted in a post-conviction proceeding because it required consideration of matters outside the record.³ ECF No. 8-1 at 89. Though Gunner acknowledged that his appellate counsel "had no obligation to meet the time limit for filing a Petition for Post Conviction Relief," Gunner contended that the attorney's failure to inform him about the cutoff "deprived" him of the opportunity to assert the claim. ECF No. 8-1 at 88-89. Gunner requested the appeals court to order the re-transmission of the trial record so that the post-conviction clock could be rewound and he could timely file for post-conviction relief. ECF No. 8-1 at 90.

After Gunner amended the Rule 26(B) application to add supplemental materials (ECF No. 8-1 at 99), the appeals court denied the application. The court ruled that Gunner did not specify any argument that his appellate counsel should have raised on direct appeal, as is required under Appellate Rule 26(B)(2).⁴ ECF No. 8-1 at 142. The court also noted that re-opening the

---

² R.C. § 2953.21(A)(2) provides in relevant part: "Except as otherwise provided in section 2953.23 of the Revised Code, a petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcription is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication . . . ."

³ Gunner's rejection of the State's plea offer is in the record but any discussion he had with his trial attorney about whether or not to accept it is not. ECF No. 8-1 at 126.

⁴ Appellate Rule 26(B)(2) provides in pertinent part: "An application for reopening shall contain all of the following" including "(c) One or more assignments of error or arguments in

3

(3:09CV03009)

appeal would not cause the record to be "re-transmitted" so as to provide Gunner the remedy he desired: a second opportunity to file for post-conviction relief. ECF No. 8-1 at 142. Gunner's subsequent appeal to the Ohio Supreme Court was dismissed. ECF No. 8-1 at 144, 180. He has not petitioned for a writ of certiorari from the United States Supreme Court. ECF No. 1 at 2.

### b. Federal Habeas Proceeding

Gunner now seeks habeas relief from this Court. ECF No. 1. His petition asserts a single claim: Gunner's trial counsel was constitutionally ineffective for failing to advise him "in the strongest possible terms" to take a plea bargain offered by the State. ECF No. 1-1 at 5. Pointing to his status as a youthful offender[5] with no prior felony record, Gunner claims that had he accepted the offer it " would in all likelihood have resulted in a 3 year sentence." ECF No. 1-1 at 5-6. Gunner concedes that this claim should have been raised in a State post-conviction proceeding pursuant to R.C. § 2953.21, and, as it was not, it has been procedurally defaulted. ECF Nos. 11 at 2; 15 at 11. Nevertheless, Gunner maintains that his court-appointed appellate counsel's failure to advise him of the time limit for pursuing post-conviction relief was itself constitutionally ineffective, which, therefore, excuses the procedural default.[6] ECF No. 11 at 2.

---

support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation . . . ."

[5] Gunner was eighteen years-old at the time of his trial. ECF No. 1-1 at 1.

[6] Technically, Gunner's petition raises *two* claims for relief: (1) ineffective assistance of trial counsel and (2) ineffective assistance of appellate counsel. ECF No. 1-1 at 2. The State correctly points out, however, that the second claim is not really an independent ground for relief but is rather a justification for why the first claim was not raised in State court. ECF No. 8 at 12.

4

(3:09CV03009)

The State contends that any failure of the appellate lawyer to inform Gunner of the relevant time limit cannot excuse Gunner's failure to file for post-conviction relief. ECF No. 8 at 12. First, the State argues that Gunner's claim of ineffective assistance of appellate counsel is itself defaulted because he did not present that claim in a properly filed Rule 26(B) application. ECF No. 8 at 15. Second, the State asserts that because Gunner has no constitutional right to counsel in State post-conviction proceedings, his appellate attorney cannot be constitutionally ineffective for not advising Gunner of when he must initiate such a proceeding. ECF No. 8 at 17.

The magistrate judge determined that "the actions or inactions of the appeals counsel could not excuse" the default, and, on that basis alone, he recommended dismissing the petition. ECF No. 15 at 17. Gunner timely filed an objection to the magistrate judge's report. ECF No. 16. After obtaining leave from the Court, Gunner filed a supplemental memorandum discussing *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), a case decided after the issuance of the report and recommendation. ECF No. 18. The State filed a response (ECF No. 19-1), to which Gunner filed a reply. ECF No. 22. With the matter fully briefed, the Court now undertakes a *do novo* review of the magistrate judge's report and recommendation.

## II. Legal Standard

A federal district court may designate a magistrate judge to submit recommendations for the disposition of a habeas petition. 28 U.S.C. § 636(b)(1)(B). Where an objection is filed, the federal district court "shall make a *de novo* determination of those portions of the report or

---

Gunner accepts this framing of the issue. ECF No. 11 at 2.

(3:09CV03009)

specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636 (b)(1)(C). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (b)(1)(C).

### III.  Federal Habeas Jurisprudence

A summary of the applicable habeas law provides an instructive foundation for the Court's review. "[T]he writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness." *Brecht v. Abrahamson*, 507 U.S. 619, 633, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (internal quotations omitted). Although the scope of the writ has varied throughout our country's history, today "it is designed to guard against extreme malfunctions in the state criminal justice systems." *Jackson v. Virginia*, 443 U.S. 307, 333, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a petition for a writ of habeas corpus with respect to any claim that was decided on the merits in State court proceedings unless the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A federal court also generally may not grant habeas relief if the petitioner failed to comply with the rules "designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 132 S. Ct. at 1316.

6

(3:09CV03009)

To police these rules, a federal habeas court "must first determine whether the petitioner has exhausted the remedies available to him in state court." Lott v. Coyle, 261 F.3d 594, 601 (6th Cir. 2001). This requirement is satisfied when the highest court in the State where the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims. Id. at 608. "This exhaustion requirement is . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Thus, a federal court must refrain from disrupting State judicial proceedings by deciding a habeas claim before that claim has been fully presented at the State level. Braden v. 30th Judicial Circuit of Kentucky, 410 U.S. 484, 490-91, 93 S. Ct. 1123, 35 L. Ed. 2d 443 (1973).

The same concerns apply when a prisoner's claims have been procedurally defaulted. "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." Coleman v. Thompson, 501 U.S. at 732-33. Federal review of a procedurally defaulted claim is also costly in the sense that it reduces the finality of litigation and frustrates the State's sovereign power to punish offenders and its good-faith attempts to honor constitutional rights. Murray v. Carrier, 477 U.S. 478, 487, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). This is true whether the procedural default occurred at trial, on appeal, or on state collateral attack. Id. at 490. As a consequence, "[t]he federal court will not review claims that were not entertained by the state court either due to the petitioner's failure to raise those claims in the state courts while

(3:09CV03009)

state remedies were available or when the petitioner's failure to comply with a state procedural rule prevented the state courts from reaching the merits of the claims." *Smith v. State of Ohio Department of Rehabilitation & Corrections*, 463 F.3d 426, 430-31 (6th Cir. 2006).

In order for noncompliance with a State procedure to bar federal habeas corpus review, the criteria outlined by the Sixth Circuit in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) ordinarily must be satisfied.  Under *Maupin*, the federal habeas court must determine that (1) there is a State procedural rule applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the State court actually enforced the State procedural sanction; and (3) the State procedural rule is an "adequate and independent" State ground on which to preclude federal habeas review.  *Id.*  Even where *Maupin* is satisfied, however, there exist well-established exceptions to the doctrine of procedural default.  A State prisoner may still obtain federal review of a defaulted claim by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. at 750.

Whether "cause" exists to excuse a procedural default depends on whether the prisoner can show that "some objective factor external to the defense" impeded or interfered with his or her compliance with a State procedural rule.  *Murray v. Carrier*, 477 U.S. at 488.  The "external-factor requirement" reflects the judgment that States should not be forced to undergo federal habeas review of a defaulted claim unless a factor not attributable to the prisoner obstructed his compliance with State procedures.  *Martinez v. Ryan*, 132 S. Ct. at 1324 (*Scalia, J.,* dissenting).

(3:09CV03009)

### IV. Discussion

In this case, there is no need to determine procedural default under *Maupin* because Gunner has conceded that he defaulted on his habeas claim alleging ineffective assistance with respect to his trial counsel. ECF No. 11 at 2. The issue of the moment is, rather, whether the admitted default may be excused by the alleged ineffectiveness of Gunner's appellate counsel. In other words, the Court must determine whether the appellate attorney's conduct constitutes "cause" permitting Gunner to overcome his default.

According to the magistrate judge, "'attorney error cannot constitute cause [to excuse a procedural default] where the error caused the petitioner to default in a proceeding in which the petitioner was not constitutionally entitled to counsel.'" ECF No. 15 at 19. He concludes that the petition must therefore be dismissed because, after all, Gunner's underlying claim is that his appellate counsel's omission caused him to miss the filing cutoff for post-conviction relief–a proceeding in which Gunner has no constitutional right to an attorney. ECF No. 15 at 19.

At the outset, the Court recognizes that the magistrate judge's statement of the law is subject to an important qualification in the United States Supreme Court case of *Martinez v. Ryan*, 132 S. Ct. at 1320, a case the magistrate judge did not have an opportunity to consider because it had not been decided at the time of the report and recommendation. Nevertheless, as the Court will articulate, neither *Martinez v. Ryan* nor any other case relied upon by Gunner compels a result contrary to that proposed in the magistrate judge's report.

9

(3:09CV03009)

### A.

The Court first notes that attorney error is *ordinarily* no justification for a procedural default. It is a well-established principle that there is "no inequity in requiring [a prisoner] to bear the risk of attorney error that results in procedural default"; *Murray v. Carrier*, 477 U.S. at 488 (noting that costs associated with federal habeas review of defaulted claims do not disappear even when default stems from counsel's ignorance); particularly because "[u]nder our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent . . . ." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 91, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990) (internal quotations omitted). But attorney error amounting to *constitutionally* ineffective assistance *is* cause for a procedural default. *Coleman v. Thompson*, 501 U.S. at 753-54. In such a case, the error–which is a constitutional deprivation–is regarded as an event external to the prisoner, for which responsibility is imputed to the State and not the prisoner. *Id.* at 754. As a consequence, the State must "bear the cost of any resulting default and the harm to state interests that federal habeas review entails." *Id*. The question of whether counsel's ineffectiveness amounts to a constitutional deprivation is evaluated under the familiar *Strickland* standard, which tests whether counsel's unreasonable performance under the circumstances prejudiced the client. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The United States Supreme Court has held, however, that regardless of the caliber of counsel's performance, a prisoner may not be deprived of the effective assistance of counsel (as a constitutional matter) in a proceeding where the prisoner has no constitutional right to counsel in the first place. *Wainwright v. Torna*, 455 U.S. 586, 587-88, 102 S. Ct. 1300, 71 L. Ed. 2d 475

(3:09CV03009)

(1982). Moreover, a prisoner's entitlement under the Constitution to court-appointed counsel is demarcated at "the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987). There is no constitutional entitlement to counsel in discretionary appeals or in post-conviction collateral proceedings. *Id.* at 555. In this context, the Court now explicitly frames the precise question that guides its analysis: Was Gunner, during his direct appeal, deprived of the constitutional right to effective assistance of counsel when his attorney did not inform him about the time requirements for a *different* proceeding in which Gunner does not enjoy a constitutional right to counsel? If not deprived of a constitutional right, then the inaction does not excuse the default. Without a constitutional deprivation, Gunner's ignorance of the time limit at issue is not "external," and responsibility for the default may not be attributed to the State.

Sixth Circuit precedent teaches that Gunner suffered no such deprivation. In *Wilson v. Hurley*, 382 Fed. Appx. 471, 472 (6th Cir. 2010), the petitioner was convicted in Ohio of rape and sexual battery. After unsuccessful appeals to the Ohio Court of Appeals and the Ohio Supreme Court, the petitioner attempted to raise new claims by re-opening his direct appeal through a Rule 26(B) application. *Id.* at 472-73. The appeals court denied the application as untimely, and the Ohio Supreme Court dismissed the appeal from that decision. *Id.* at 474. Following the State legal proceedings, the petitioner filed a habeas petition in federal district court alleging the same claims as asserted in the untimely Rule 26(B) application. *Id.* The federal court denied the petition on the ground that those claims (as well as others) had been procedurally defaulted. *Id.*

On appeal, the Sixth Circuit was presented with the question of whether the failure of the

11

(3:09CV03009)

petitioner's direct-appeal attorney "to advise him of the ninety day deadline for filing a Rule 26(B) application constitutes cause sufficient to overcome his procedural default." *Wilson v. Hurley*, 382 Fed. Appx. at 478. The court noted that a Rule 26(B) proceeding, like a post-conviction proceeding, is not part of the direct right of appeal but is instead a collateral proceeding for which a prisoner has no constitutional right to counsel. *Id.* It then rejected the notion that the appellate counsel's duty to provide effective assistance during the direct appeal carried with it the duty to notify the petitioner of the deadline for filing a Rule 26(B) application. *Id.* at 479. Accordingly, the Sixth Circuit held that counsel's inaction could not constitute cause for the petitioner's procedural default because the conduct "does not relate to . . . the direct appeal. Rather, such conduct relates to an independent, collateral proceeding." *Id.*

*Wilson v. Hurley* crystallizes the principle that a direct-appeal attorney cannot deprive a client of constitutionally effective assistance of counsel by failing to advise that client of matters *outside* the direct appeal for which there is no right to an attorney under the Constitution. This conclusion coheres with an early observation of the United States Supreme Court that the role played by court-appointed counsel in a direct appeal "requires that [the attorney] support his client's *appeal* to the best of his ability." *Anders v. State of California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (emphasis added). Similarly, Ohio has long taken the view that "the initial burden of preparing and presenting petitions for post-conviction relief . . . rests solely upon the prisoner himself without any obligation imposed upon the state to provide him with the assistance of counsel." *State v. Barnes*, 7 Ohio App. 3d 83, 86, 454 N.E.2d 572 (1982) (internal quotations omitted), *cert. denied*, 469 U.S. 1088, 105 S. Ct. 596, 83 L. Ed. 2d 705

12

(3:09CV03009)

(1984); *see* State v. Sheets, 2005 WL 435149 at * 2 (Ohio App. 4 Dist. February 7, 2005); State v. Johnson, 2003 WL 22146529 at *6 (Ohio App. 8 Dist. September 18, 2003), *appeal denied*, 101 Ohio St. 3d 1423, 802 N.E.2d 154 (2004); State v. Slusher, 1998 WL 130199 at *1 (Ohio App. 12 Dist. March 23, 1998); *appeal denied*, 82 Ohio St. 3d 1440, 695 N.E.2d 264 (1998).

Gunner first objects that *Wilson v. Hurley* is distinguishable because the time limit in that case expired after the direct-appeal attorney's duties ended. ECF No. 16 at 12. Gunner points out that the time limitation in his case expired during the pendency of the appellate lawyer's representation. ECF No. 16 at 11. Gunner argues that "it was objectively reasonable for [him] to rely upon his court-appointed counsel to advise him of any deadlines that would have to [be met] during the time when [he] was still being represented by court-appointed counsel," therefore, his attorney's failure to advise was an error of constitutional dimensions. ECF No. 16 at 7.

Gunner's claim, if accepted, would impermissibly enlarge the responsibilities of court-appointed counsel on direct appeal, and, by implication, the constitutional boundaries of fairness and due process. *See, generally,* Douglas v. People of the State of California, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963) (due process and equal protection concerns vindicated when counsel is provided in first appeal as of right). Moreover, the cases supplied by Gunner do not support his contention. Smith v. State of Ohio Department of Rehabilitation & Corrections, 463 F.3d at 432, involved a federal habeas petitioner who had procedurally defaulted his claims by failing to timely file a notice of appeal to the Ohio Supreme Court. In Ohio, a prisoner is given 45 days from the decision of the Court of Appeals to appeal from that decision. *Id.* at 429 n.1. The Sixth Circuit excused the default in *Smith* on the ground that the direct-appeal attorney failed

(3:09CV03009)

to inform the petitioner of the decision of the appeals court, leaving the petitioner without any means of knowing that the 45-day limit had begun to run. *Id.* at 434. In holding that the attorney's "constitutionally deficient performance" amounted to cause, the Sixth Circuit underscored that "appointed counsel's duties in representing a client during [a] legal proceeding include the duty of informing [the] client of the outcome of the proceeding." *Id.* at 433. Gunner, however, does not claim that his appellate counsel failed to inform him of the outcome of the appeal. *Smith*, moreover, did not recognize any duty of appointed appellate counsel to advise a client about matters outside the parameters of the appeal.

*Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), is similarly unavailing. In that case, the Supreme Court held that a trial attorney was constitutionally ineffective for failing to advise his client that pleading guilty to drug charges subjected him to automatic deportation. *Id.* at 1478. The specific issue faced by the Supreme Court was whether the Sixth Amendment's guarantee of effective assistance of counsel protects a criminal defendant from erroneous advice about deportation, even though the immigration consequences of a criminal conviction is not strictly a part of the criminal proceeding. *Id.* After undertaking a comprehensive review of our immigration legislation, the Supreme Court determined that deportation is an "integral part" of the penalty that may be imposed on non-citizens who plead guilty to certain crimes. *Id.* at 1480. It therefore held:

> Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation. We conclude that advice regarding deportation is not categorically removed from

14

(3:09CV03009)

the ambit of the Sixth Amendment right to counsel.

*Id.* at 1482. But a post-conviction proceeding, unlike an immigration proceeding, is collateral in nature. *See Pennsylvania v. Finley*, 481 U.S. at 556-57. A post-conviction proceeding does not share the uniquely close connection with a criminal proceeding as does one which determines a criminal defendant's immigration status. And, the post-conviction result does not hinge upon the advice given by counsel in furtherance of the prisoner's direct appeal. *Padilla* does not apply.

Gunner's next objection is that *Martinez v. Ryan* demonstrates that the magistrate judge's recommendation is in error. ECF No. 18 at 1. *Martinez v. Ryan* involved a particular type of proceeding know as an "initial-review collateral proceeding," which, stated differently, is a collateral proceeding that provides the first occasion for a prisoner to raise a claim of ineffective assistance of counsel at trial. 132 S. Ct. at 1315. The United States Supreme Court held that where a prisoner defaults in such a proceeding, cause may be established in two circumstances:

> "The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding . . . was ineffective under the standards of *Strickland v. Washington*."

*Id.* at 1318. The prisoner must also demonstrate that the underlying ineffective assistance of trial counsel claim is "substantial," meaning that the claim "has some merit." *Id.* The rule announced in *Martinez v. Ryan* invalidates the magistrate judge's analysis to the extent that his analysis depends on the blanket proposition that attorney error can *never* constitute cause for defaults in proceedings in which there is no constitutional entitlement to counsel. *See* ECF No. 15 at 19. *Martinez v. Ryan*, however, did not abrogate the Sixth Circuit's holding in *Wilson v. Hurley*, which

15

(3:09CV03009)

governs Gunner's claim.  It, therefore, cannot excuse Gunner's procedural default.

### B.

The facts *Martinez* warrant discussion.  After Martinez was convicted in Arizona of sexual conduct with a minor, the State appointed a new attorney to represent him in the direct appeal. *Martinez v. Ryan*, 132 S. Ct. at 1314.  Martinez raised numerous claims but he did not claim that trial counsel was ineffective because Arizona law requires such claims to be reserved for State collateral proceedings.  *Id.*  While the appeal was pending, Martinez's appellate counsel filed a notice of post-conviction relief with the trial court.  *Id.*  Yet, despite initiating this collateral proceeding, the attorney made no claim that trial counsel was ineffective, and later filed a statement asserting she could find no claims at all.  *Id.*  The post-conviction court then gave Martinez 45 days to file a *pro se* petition in support of post-conviction relief.  *Id.*  Martinez did not respond.  *Id.*  He later claimed that he was unaware of the proceeding and that his attorney failed to advise him of the need to file a *pro se* petition to preserve his rights.  *Id.*  The court then dismissed Martinez's action.  *Id.*

Martinez, through new counsel, filed a second notice of post-conviction relief.  *Martinez v. Ryan*, 132 S. Ct. at 1314.  This time, Martinez claimed his trial lawyer had been ineffective for failing to challenge the prosecution's evidence.  *Id*.  This action was dismissed due to an Arizona rule barring relief on claims that could have been raised in a previous collateral proceeding.  *Id.*  The State appeals court agreed, and the Arizona Supreme Court declined to review the appeal.  *Id.*

Seeking habeas relief in federal district court, Martinez raised the same ineffective assistance of trial counsel claims.  *Martinez v. Ryan*, 132 S. Ct. at 1314.  He conceded that he had

(3:09CV03009)

procedurally defaulted the claim in State court. *Id.* Nonetheless, Martinez argued that he had cause for the default because his first post-conviction counsel was ineffective in failing to raise any claims in the first post-conviction proceeding and in failing to notify Martinez of her actions. *Id.* at 1314-15. The district court rejected the argument, and the Ninth Circuit affirmed. *Id.* at 1315.

The United States Supreme Court reversed. It acknowledged "the constitutional rule that there is no right to counsel in collateral proceedings." *Martinez v. Ryan*, 132 S. Ct. at 1315. It distinguished, however, initial-review collateral proceedings from other collateral proceedings. The Supreme Court was particularly concerned that when an attorney errs in an initial-review collateral proceeding and thereby disqualifies a prisoner's ineffective assistance of trial counsel claim, "it is likely that no state court at any level will hear the prisoner's claim." *Id.* at 1316. In the Supreme Court's judgment, this prospect is so detrimental to a prisoner's right to a fair trial that it warranted the creation of a rule excusing procedural defaults in initial-review collateral proceedings where the specified requirements are satisfied. *Id.* at 1316-1318.

Gunner argues, and the State does not dispute, that he defaulted in an initial-review collateral proceeding. ECF Nos. 18 at 2-3; 19-1. In Ohio, an ineffective assistance claim requiring consideration of matters outside the record must be pursued in a post-conviction proceeding instead of on direct appeal. *See State v. Cooperrider*, 4 Ohio St.3d 226, 228, 448 N.E.2d 452 (1983); *Gaston v. Ohio*, 27 Fed. Appx. 301, 306 (6th Cir. 2001). Even so, *Martinez v. Ryan* cannot save Gunner's default for two reasons. Gunner cannot claim that he received ineffective counsel in an initial-review collateral proceeding because, unlike Martinez, *he never had an attorney for such a proceeding*. Likewise, Gunner cannot argue that the State failed to appoint counsel for an initial-

17

(3:09CV03009)

review collateral proceeding because, as Gunner concedes, *he never filed the requisite petition*. ECF No. 22 at 2.  Ohio will provide post-conviction counsel to a prisoner where (1) the post-conviction court determines that the petitioner's allegations warrant an evidentiary hearing, and (2) counsel determines that the petitioner's allegations have "arguable merit." *State v. Randolph*, 2002 WL 258240 at *1 (Ohio App. 5 Dist. February 19, 2002) (*citing State v. Crowder*, 60 Ohio St. 3d 151, 573 N.E.2d 652 (1991)); *see* R.C. § 120.16.[7]  The State, of course, is in no position to make the aforementioned determinations unless it is in receipt of the post-conviction petition.

That the Supreme Court desired the States to determine when to provide counsel in an initial-review collateral proceeding is apparent in its decision.  To effectuate this desire, the Supreme Court grounded its rule respecting cause in principles of equity rather than in constitutional law.[8]  *See Martinez v. Ryan*, 132 S. Ct. at 1319-1320 ("[a] constitutional ruling . . . would impose the same system of appointing counsel in every State [whereas] . . . [a]n equitable ruling, by contrast, permits States a variety of systems for appointing counsel in initial-review collateral proceedings.").  The Supreme Court also observed with approval that "[m]ost jurisdictions have in place procedures to ensure counsel is appointed for substantial ineffective-

---

[7] R.C. § 120.16(A)(1) provides: "The county public defender shall provide legal representation to indigent adults and juveniles who are charged with the commission of an offense or act that is a violation of a state statute and for which the penalty or any possible adjudication includes the potential loss of liberty and in postconviction proceedings as defined in this section."  R.C. § 120.16(D), in turn, provides: "The county public defender shall not be required to prosecute any appeal, postconviction remedy, or other proceeding, unless the county public defender is first satisfied there is arguable merit to the proceeding."

[8] It therefore continues to the law that there is no constitutional right to counsel in State collateral proceedings.

18

(3:09CV03009)

assistance claims." *Id.* at 1319. It may properly be inferred, therefore, that where such procedures are not followed, cause cannot be established for a prisoner's lack of appointed counsel in an initial-review collateral proceeding. Of course, there may be cause if a State ultimately fails to provide counsel despite a "substantial" ineffective assistance claim. But *Martinez v. Ryan* does not reach cases, such as this one, wherein the State was not given an opportunity to decide, consistent with its laws, whether counsel should be provided in the first place.

### V. Conclusion

Based on the foregoing discussion, the Court adopts the report and recommendation of the magistrate judge, subject to the modifications articulated in this memorandum. Gunner's petition for a writ of habeas corpus is therefore dismissed.

A certificate of appealability may issue, if requested. If Gunner seeks a certificate of appealability from this Court in accordance with Fed. R. App. P. 22, he must file an application stating the precise issue or issues for review on appeal.

IT IS SO ORDERED.

| | |
|---|---|
| February 28, 2013 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |